# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 27, 2010 at Knoxville

## STATE OF TENNESSEE v. JAMIE LYNN MIDDLEBROOK

**Appeal from the Criminal Court for Davidson County**
**No. 2008-A-790     Cheryl Blackburn, Judge**

---

**No. M2009-02276-CCA-R3-CD - Filed January 11, 2011**

---

The Defendant, Jamie Lynn Middlebrook, was indicted by the Davidson County Grand Jury for aggravated assault, a Class C felony, and theft of property valued $1,000 or more, a Class D felony. Following a jury trial, the Defendant was convicted of aggravated assault. The jury was unable to fix the property value for the theft charge; therefore, the trial court declared a mistrial as to that count. At the sentencing hearing, the Defendant pled guilty to theft of property valued $500 or more, a Class E felony. The trial court imposed concurrent sentences of 6 years as a career offender for the theft conviction and 13 years as a persistent offender for the aggravated assault conviction. The trial court ordered the sentences to be served consecutively to a sentence imposed in another case. In this appeal as of right, the Defendant contends (1) that the evidence is insufficient to sustain her conviction of aggravated assault; (2) that the trial court erred in granting the State's motion to admit evidence of prior bad acts; and (3) that the trial court erred in sentencing the Defendant. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

David M. Hopkins (on appeal) and Ben Russ (at trial), Nashville, Tennessee, for the appellant, Jamie Lynn Middlebrook.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At trial, Brandon D. Brown, a loss prevention associate at Sears, testified that on November 6, 2007, he and Paul Pinkerton, another loss prevention employee, were utilizing cameras to observe customers shopping in the department store. Mr. Brown observed three people, Kathryn Holt, the Defendant, and a young black male, moving merchandise to a centralized location while "ducking down" and "concealing the merchandise" in a shelving area. When the three left the area, the young black male was holding a shopping bag. The three were moving quickly to the exit and left without paying for the merchandise.

Mr. Brown left the store through the lower exit and went to the parking lot, where he observed that all three were walking quickly to a vehicle. He saw the young man toss the bag of merchandise into the back of the vehicle before getting into the passenger seat of the vehicle. The Defendant got into the driver's seat of the vehicle. However, Ms. Holt, who was "lagging behind," was eventually detained by Mr. Pinkerton. Mr. Brown said that he approached the vehicle and identified himself as a loss prevention officer. At that time, the Defendant had not shut her door or started the vehicle.

Mr. Brown said that the window was open and that he was holding the door with his left hand while attempting to pull at the door when the Defendant started the vehicle and reached for the gear shift. The Defendant then put the vehicle in reverse and "recklessly" backed out of the space while turning toward Mr. Brown. As she turned, she struck Mr. Brown in his right knee with the front bumper of the vehicle. After striking Mr. Brown, the Defendant continued to back out of the space and drove, while in reverse, out of the parking lot. Mr. Brown stated that he made eye contact with the Defendant when he was at her door; that the tires of her car squealed as she pulled out of the parking place; and that the Defendant drove approximately 30 miles per hour as she was backing out of the parking lot. Relative to his injury, Mr. Brown stated that his knee hurt "substantially" but that he did not have to seek any medical treatment.

On cross-examination, Mr. Brown admitted that the exterior cameras did not capture the events in the parking lot because he did not move the cameras before pursuing the Defendant. He stated that he identified himself while pursing the Defendant but that the Defendant "sped up" when she knew that he was following her. He admitted that the Defendant was "trying to avoid any contact" with him. He said that when he had his hand on the Defendant's door, the Defendant was "trying to hold the door" while "starting the vehicle at the same time." He said that there was another vehicle on the passenger side of the Defendant's vehicle and that as the Defendant pulled out of her space, she avoided contact with the vehicle on the passenger's side. He admitted that the Defendant did not put the vehicle in drive and speed toward him or put the vehicle in reverse and speed toward him

but stated that the Defendant hit him "hard enough to spin" him. He further stated that the Defendant "cut the vehicle towards [him]" and that he was "obviously afraid."

Mr. Pinkerton's sworn testimony from a deposition that took place on February 4, 2009, was read into evidence and admitted as an exhibit. The Assistant District Attorney and defense counsel were present for the deposition and asked the witness questions. At the deposition, Mr. Pinkerton testified that he was working as a loss prevention detective at Sears on November 6, 2007. His testimony regarding the activities of the Defendant, Ms. Holt, and the unidentified young black male inside the store was consistent with Mr. Brown's testimony. Relative to the Defendant's alleged aggravated assault of Mr. Brown, Mr. Pinkerton stated that when he arrived in the parking lot, the Defendant was sitting in the driver's seat of a "white [Ford] Expedition." He testified that Mr. Brown was "at the front of the vehicle on the driver's side" and that Mr. Brown was "trying to move out of the way." He said that as the Defendant was backing out of the parking space, she "clipped" Mr. Brown and then took off. He admitted that the Defendant was not driving in a "cautious" manner and stated that the Defendant was "trying to get out, out of the area." He said that after the Defendant left, Mr. Brown complained that he had been hit and that he was hurt. Mr. Pinkerton testified that the incident occurred in the daytime and that his view of the incident was not obstructed in any manner.

On cross-examination, Mr. Pinkerton stated that he did not see Mr. Brown put his hands on the vehicle's door when Mr. Brown was beside the vehicle. He stated that Mr. Brown took a step back before the Defendant struck him in the left knee with the vehicle while she was attempting to back out of the parking space. He admitted that Mr. Brown did not go to the hospital for his injury or miss any work due to his injury.

## ANALYSIS

### I. Sufficiency

The Defendant contends that the evidence was insufficient to sustain her conviction of aggravated assault when the Defendant only "clipped" the victim as she was backing out of a parking space. The Defendant further contends she did not use or intend to use her vehicle to cause death or serious bodily injury to the victim because the Defendant was attempting to leave the parking lot when the victim approached the vehicle and grabbed the vehicle. The State responds that the evidence was sufficient to sustain the Defendant's conviction because the Defendant struck the victim with her vehicle when she put her vehicle in reverse and backed out of the parking space.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The appellate court does not re-weigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

As relevant to this case, "A person commits aggravated assault who . . . [i]ntentionally or knowingly commits an assault as defined in [Tennessee Code Annotated section] 39-13-101 and . . . [u]ses or displays a deadly weapon[.]" Tenn. Code Ann. § 39-13-102(a)(1)(B). "A person commits assault who . . . [i]ntentionally [or] knowingly . . . causes bodily injury to another[.]" Tenn. Code Ann. § 39-13-101(a). A person knowingly commits an assault "when the person is aware that the[ir] conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). "[A] motor vehicle can constitute a deadly weapon within the meaning of the [statute]." State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995).

Here, the Defendant, in an attempt to escape apprehension from a loss prevention employee, closed her vehicle's door while the employee was trying to stop her. She then backed out of her parking space fast enough to cause the tires of her vehicle to squeal. While backing up, the Defendant turned her tires toward the victim and hit the victim's knee with the front bumper of her vehicle, causing him to spin around. The victim complained that his knee hurt as a result of the Defendant's actions. The evidence at trial reflected that the Defendant knew that the victim was standing near her vehicle when she quickly backed out of her parking space and that the victim was attempting to stop her from leaving the parking lot. Accordingly, we conclude that the evidence submitted at trial was sufficient to establish that the Defendant knew that quickly backing out of her parking place while turning her tires in the victim's direction was reasonably certain to cause bodily injury to the victim.

## II. Prior Bad Acts

The Defendant contends that the trial court erred in granting the State's motion to introduce the Defendant's prior convictions because the State could not establish a non-propensity purpose for admitting the evidence. The Defendant asserts that identity was not at issue in the trial when two witnesses, Mr. Pinkerton and Mr. Brown, were able to positively identify the Defendant. The State responds that these prior convictions were never introduced into evidence during trial; therefore, this issue is moot. The State alternatively contends that this issue should be waived because defense counsel failed to introduce a copy of the transcripts from the hearing on the motion to admit the evidence and the motion for new trial hearing.

At trial, during opening statements, defense counsel conceded that the Defendant participated in the theft. Following the direct examination of Mr. Brown and outside of the jury's presence, the trial court asked the Assistant District Attorney if he was going to introduce the prior conviction when identity was no longer an issue given defense counsel's concession during the opening statements. The Assistant District Attorney responded that he was not going to introduce the conviction and further stated, "I think I said that during the little hearing that we had that if he did that that I would not try to introduce that any longer." The prior conviction was not introduced at trial or discussed further until the Defendant filed her motion for new trial. Therefore, the evidence complained of was never introduced into evidence or discussed in front of the jury. Accordingly, we conclude that the Defendant has failed to establish that she is entitled to relief on this issue.

## III. Sentencing

The Defendant contends that the trial court erred in sentencing her as a persistent offender for her aggravated assault conviction and as a career offender for her theft conviction. The Defendant further contends that the trial court erred in enhancing her sentence for her aggravated assault conviction and in denying all forms of alternative sentencing. The State responds that the record supports the trial court's sentencing decision.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2005). The appealing party has the burden of showing that the imposed sentence is improper. Id. If review of the record reflects that the trial court properly considered all relevant factors, gave due consideration and proper weight to each factor, and its findings of fact are adequately supported by the record, this court must affirm the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Should the record fail to demonstrate the required considerations by the trial court, then appellate review of the sentence is purely de

novo. Ashby, 823 S.W.2d at 169. In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

The Defendant committed this offense on November 6, 2007; thus, she was sentenced under the revised sentencing act as enacted by the Tennessee General Assembly in 2005. The act provides that:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
>> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>>
>> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989

Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); Carter, 254 S.W.3d at 342-43. "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. As explained by our supreme court in Carter, the 2005 amendments to the Sentencing Act now afford the trial court such greater discretion that:

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of the [Sentencing Act].'"

Carter, 254 S.W.3d at 343 (citing Tenn. Code Ann. § 40-35-210(d)). Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute. See id.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

## A. Sentencing ranges

The Defendant contends that the trial court erred in sentencing the Defendant as a persistent offender for the aggravated assault conviction and as a career offender for the theft conviction because, pursuant to the 24-hour merger rule, five of the Defendant's seven prior convictions should have been counted as a single offense. The State concedes that the crimes occurred on the same date but asserts that the 24-hour merger rule did not apply because these crimes resulted in five convictions of robbery, a crime of violence.

At the sentencing hearing, the State submitted certified copies of the judgments of conviction for five Class C felonies and one Class E felony. The State also submitted that the Defendant was convicted of shoplifting on August 1, 1986. In support of this conviction, the State presented a certified copy of the trial court's record as relevant to that offense. The State conceded that the five Class C felonies were robbery convictions that occurred within the same 24-hour period but argued that the 24-hour merger rule did not apply because the

statutory elements of robbery included serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims. The Defendant responded that the statutory elements did not include those elements and that the statute was vague.

In determining that the five robbery convictions should be counted as five separate convictions, the trial court stated that the very definition of robbery included a threat of bodily injury because a conviction for robbery requires the State to prove that the Defendant committed the act by placing the victim in fear or by violence. The trial court also noted that the Sentencing Commission Comments to this section state that if a defendant were convicted of robbing several people in the same store, those convictions would be counted as separate convictions for enhancement purposes.

In order for the Defendant in this case to be sentenced as a persistent offender for her aggravated assault conviction, a Class C felony, the State would have to prove that she had

> [a]ny combination of five (5) or more prior felony convictions
> within the conviction class or higher, or within the next two (2)
> lower felony classes, where applicable[.]

Tenn. Code Ann. § 40-35-107(a)(1). Similarly, in order for the Defendant in this case to be sentenced as a career offender for her theft conviction, a Class E felony, the State would have to prove that she had

> [a]t least six (6) prior felony convictions of any classification if
> the defendant's conviction offense is a Class D or E felony.

Tenn. Code Ann. § 40-35-108(a)(3). In determining a defendant's offender status, the trial court is instructed to count convictions committed within the same 24-hour period as "one (1) conviction for the purpose of determining prior convictions" unless "the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims." Tenn. Code Ann. §§ 40-35-107(b)(4), -108(b)(4). This rule is commonly referred to as the 24-hour merger rule.

In determining whether the crime of robbery includes a threat of bodily injury, we must examine the statutory elements of a robbery conviction. Tenn. Code Ann. § 40-35-106(b)(4). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. Following our review, we conclude that the statutory elements of robbery include a threat of bodily injury when the State is required to prove that the defendant committed the act through violence or by putting the person in fear. See State v. Iwanda Anita Buchanan, No. M2007-

02870-CCA-R3-CD, 2008 WL 4467185 (Tenn. Crim. App. Oct. 6, 2008). Therefore, we conclude that the trial court did not err in sentencing the Defendant as a persistent offender for the aggravated assault conviction and as a career offender for the theft conviction.

## B. Enhancement factors

The Defendant contends that the trial court erred in enhancing the Defendant's sentence for her conviction of aggravated assault. The Defendant, still contending that the trial court erred in classifying the Defendant as a career offender for the theft conviction, also appears to contend that the trial court erroneously sentenced the Defendant to six years for the theft conviction. The Defendant further contends that the trial court erred in declining to consider the Defendant's proposed mitigating factors. The State responds that the trial court properly sentenced the Defendant after considering the submitted enhancement factors.

In determining the Defendant's sentence for the aggravated assault conviction, the trial court applied the following enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
>
> (2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
>
> (8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;
>
> (13) At the time the felony was committed, one (1) of the following classifications was applicable to the defendant:
> (B) Released on parole[.]

Tenn. Code Ann. § 40-35-114. The trial court stated that it gave great weight to factors 8 and 13 in arriving at its sentencing decision. Relative to mitigating factors, the trial court found that the theft did not cause bodily injury but that her escape from the theft ultimately led to bodily injury. The trial judge found that the Defendant did not play a minor role and that although the Defendant did have mental issues, she was not sure how they related to this case. In finding that there were no applicable mitigating factors, the trial court stated, "I really don't see any mitigating factors that could be something that I need to apply in this case."

The Defendant pled guilty to theft, a Class E felony, and, as noted above, was properly classified as a career offender. Thus, the Defendant's six-year sentence was mandated by statute. See Tenn. Code Ann. § 40-35-108(c). The Defendant was convicted of aggravated assault, a Class C felony, and, as noted above, was properly classified as a persistent offender. Thus, the Defendant's 13-year sentence was within the range of the 10 to 15 years that the Defendant could have received upon being convicted of a Class C felony as a Range III, persistent offender. See Tenn. Code Ann. § 40-35-112(c)(3).

The Defendant specifically disagreed with the application of enhancement factor number two; however, the Defendant was driving the vehicle when she committed the aggravated assault. As previously explained, as long as the record reflects that the trial court considered the principles of sentencing and facts and circumstances of the offense in arriving at its determination, this court is bound by the weight afforded any sentencing factors applicable to the offense. Following our review, we conclude that the record supports the application of the enhancement factors found by the trial court and that the sentence lengths imposed in this case comply with the purposes and principles of sentencing that were properly considered by the trial court. Accordingly, we also conclude that the record supports the trial court's ultimate sentencing decision.

## C. Alternative sentencing

The Defendant contends that the trial court erred in concluding that the Defendant was ineligible for a community corrections sentence when the Defendant's special needs would best be served in the community. The Defendant further contends that her mental health needs were reasonably related to her criminal activity. The Defendant asserts that, according to Tennessee Code Annotated section 40-36-106(c), "a defendant is eligible for community [c]ommunity [c]orrections, regardless of the length of the defendant's sentence." The State responds that the Defendant was ineligible for alternative sentencing because her "13-year sentence rendered her ineligible for probation."

Following testimony relative to the Defendant's mental health issues, the trial court found that the Defendant had a history of committing crimes of violence and that the Defendant was "not otherwise eligible for probation, because her sentence is over ten years[; therefore,] she's not eligible for any alternative sentence according to the statute."

A defendant is eligible for probation "if the sentence actually imposed upon the defendant is ten (10) years or less." Tenn. Code Ann. § 40-35-303(a). As the Defendant in this case received a sentence of 13 years for her aggravated assault conviction, she was ineligible for probation. While her ineligibility for probation would not preclude consideration of alternative sentencing under Tennessee Code Annotated section 40-36-

106(a), she did not qualify under that section because she was convicted of aggravated assault, an offense involving a crime against the person. Tenn. Code Ann. § 40-36-106(a)(1)(B)-(C); see State v. Vincent Johnson, No. W2008-02156-CCA-R9-CD, 2009 WL 3349291, at *3 (Tenn. Crim. App. Oct. 19, 2009). Having established that she was ineligible for alternative sentencing under Tennessee Code Annotated section 40-36-106(a), we must now determine whether she was eligible for alternative sentencing under Tennessee Code Annotated section 40-36-106(c), which provides, in pertinent part:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under this chapter.

Tenn. Code Ann. § 40-36-106(c). This provision is commonly referred to as the "special needs" provision. As the trial court found and the State contends, the Defendant was also ineligible for alternative sentencing under the special needs provision because she was ineligible for probation. See Johnson, 2009 WL 3349291, at *2. A close reading of the statutes and this court's opinion in the Johnson case, reveals that an offender must be eligible for probation in order to be eligible for an alternative sentence under the special needs provision. Id. ("[B]efore being placed in community corrections based upon Tennessee Code Annotated section 40-36-106(c), an offender must first be eligible for regular probation."). Accordingly, we conclude that the record supports the trial court's denial of alternative sentencing.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____<br>D. KELLY THOMAS, JR., JUDGE

-11-